**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FIRST SOURCE FINANCIAL USA, INC., | |
|     Plaintiffs/Counterclaim Defendant, | Case No. 2:06-cv-01290-RCJ-PAL |
| vs. | **ORDER** |
| NBANK, N.A., | |
|     Defendant/Counterclaim Plaintiff/<br>    Third-Party Plaintiff, | (Emergency Motion/ Sanctions #90) |
| vs. | |
| NOMURA CREDIT & CAPITAL, INC. | |
|     Third-Party Defendant. | |

This matter is before the court on third-party defendant Nomura Credit & Capital, Inc.'s ("Nomura") Emergency Supplemental Motion for Discovery Sanctions (#90), requesting that the court sanction nBank, N.A. ("nBank") for failure to produce certain documents in response to Nomura's discovery requests. The court conducted a hearing to address this motion on September 28, 2007 at 10:30 a.m., took this matter under advisement and indicated a written order would be issued. The court has considered Nomura's motion (#90), defendant nBank's response (#96), Nomura's reply (#103), and the arguments of counsel at the hearing.

**BACKGROUND**

Nomura seeks sanctions against nBank in the form of striking nBank's third party complaint and an order of default judgment for nBank's willful and fraudulent failure to produce documents in its possession and control which Nomura discovered by contacting counsel in a related litigation pending in South Carolina.

Nomura served nBank with numerous requests for production regarding nBank's third-party complaint (#5) against Nomura. The requests for production pertinent to this motion (#90), followed by nBank's responses, are as follows:

> **Request No. 3**:
> Produce all documents, communications, guidelines, handbooks, memoranda, or other materials relating to nBank's policies and procedures relating to the provision of warehouse funding for the origination of residential mortgate loans, including the current nBank policies and procedures on such matters and nBank's policies and procedures on such matters [sic] for the past five (5) years.
>
> **Response**:
>
> In addition to its General Objections, nBank objects to Request No. 3 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to the [sic] lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, nBank will produce non-privileged documents relating to policies and procedures in effect in 2005 at a mutually agreeable time and place.
>
> **Request No. 6**:
>
> Produce all documents, materials, and things which evidence or relate to nBank's policies and procedures regarding Bailee Letters, or alleged "Bailee Agreements" (as defined and referred to in the relevant pleadings in this case).
>
> **Response**:
>
> In addition to its General Objections, nBank objects to Request No. 6 on the grounds that it is overly broad, unduly burdensome, not limited in time or scope and not reasonably calculated to the [sic] lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, nBank will produce non-privileged documents responsive to Request No. 6 relating to policies and procedures in effect in 2005 at a mutually agreeable time and place.
>
> **Request No. 42**:
>
> All documents, including without limitation loan funding and policy and procedure manuals, governing nBank's broker participation activities from 2000 to the present.
>
> **Response**:
>
> In addition to its General Objections, nBank objects to Request No. 41 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to the [sic] lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, nBank will produce non-privileged documents responsive to Request No. 41 relating to policies and procedures in effect in 2005 at a mutually agreeable time and place.

(Mot. at Exh. 4)

/ / /

     Fact discovery closed on June 10, 2007 (#24). On July 24, 2007, Nomura became aware of four documents nBank had produced in <u>Option One Mortgage Corp. v. Universal Mortgage Group, Inc., Roy Schneider, and nBank, N.A.</u>, Civil Action No. 3:06-2007-JFA, a case pending in the District of South Carolina. These documents, which nBank had not produced to Nomura during discovery in this case, include 1) Warehouse Line Department Quality Control Plan, 2) Warehouse Line Department Audit Report, 3) Warehouse Lines Possible Risks and Recommendations Memorandum, (the "Risks Memo") and 4) email communication in February and March 2006 from Mistie Roberson, nBank's former Quality Control Manager, to her supervisors, Libby Hartley and Larry Cole, and nBank Senior Vice President Ron Walton (collectively, the "documents"). (Mot. at Exh. 4) nBank produced these documents in the South Carolina case in response to discovery requests seeking documents and information related to internal audits or reviews of nBank's Broker Participation Division. On July 29, 2007, counsel for Nomura contacted counsel for Option One in the South Carolina action to determine if South Carolina counsel had documents produced in discovery that might be useful in this case. On August 22, 2007, counsel for Option One provided counsel for Nomura with the four documents at issue here.

     Ms. Roberson originally created the documents in preparation for an internal quality control audit of the Broker Participation Division. In the Risks Memo, Ms. Roberson identifies potential financial and legal risks to nBank on a variety of topics and makes recommendations for improvement. Of significance to this case, this document identifies nBank's bailee letter as a potential risk because it does not require the intended investor to sign, nor does it contain language stating that the investor is bound by the terms of the bailee letter.

     Nomura argues that the documents nBank failed to produce were responsive to its discovery requests, that nBank wilfully and fraudulently withheld the documents, and that they undermine nBank's entire case against Nomura. Nomura claims it suffered severe prejudice as a result, and requests that the court sanction nBank by striking its third-party complaint, entering default judgment in favor of Nomura regarding nBank's third-party complaint, and award attorneys' fees and costs to

///

///

Nomura. Nomura asserts that had nBank produced these documents, the district judge would likely have granted its motion for summary judgment, and that the failure to produce these documents has "tainted the entire litigation" and has impeded Nomura's ability to defend itself against nBank's claims for relief. Nomura emphasizes that it only obtained these documents on August 22, 2007, more than a month after the close of discovery, and less than one week before the court's September 28, 2007, hearing to address all of the parties final discovery disputes. Thus, nBank's failure to disclose these documents has caused Nomura to spend hundreds of thousands of dollars defending itself against nBank's meritless claims. These discovery abuses, it is argued, warrant the case-dispositive sanctions requested here. If the court is not inclined to impose case-dispositive sanctions, Nomura requests that the court award Nomura monetary sanctions for all of its costs and attorneys' fees incurred in the litigation, or at a minimum, the cost and fees incurred in conducting the additional discovery needed. Nomura also asks that the court make a finding that nBank willfully withheld responsive documents, and that the four documents should be deemed properly discovered evidence in this action for all purposes." During oral argument counsel for Nomura indicated that if the court was not inclined to grant the case-dispositive sanctions requested, at a minimum, the court should permit Nomura to depose Mistie Roberson, the author of the risk memo, and Michelle Harold in her personal capacity, as well as Charles Blair, nBank's CEO and order that nBank incur the costs and fees associated with this additional discovery.

In response (#96), nBank argues that the documents are not responsive to Nomura's discovery requests because they are not "policies and procedures." In the alternative, nBank argues that even if the documents are responsive to Nomura's discovery requests, nBank was not required to produce them because the disputed documents were created in 2006, and nBank reasonably limited the scope of its responses to policies and procedures in effect in 2005 – a limitation Nomura did not object to until well after the deadline the court established for the parties to raise discovery disputes. nBank emphasizes that it voluntarily produced these and other documents when requested in the South Carolina litigation, and did not designate the documents as "confidential" which enabled nBank to obtain them from counsel for Option One. nBank also argues that the documents were created as part of nBank's quality control and internal auditing process, and that the internal audit Ms. Roberson recommended was never

1  undertaken because the Broker Participation Division of the company was closed in the spring of 2006.
2  Thus, the withheld documents in question are not directly responsive to Nomura's Request for
3  Production ## 3, 6 or  42, or were not required to be produced because Nomura limited its responses to
4  policies and procedures in effect in 2005.  nBank also argues that because determination of the legal
5  sufficiency of contracts is a matter for the court to decide, these documents, which address internal
6  audit preparation "cannot affect the enforceability of contracts."  Finally, nBank asserts that Nomura's
7  failure to address the limitation nBank imposed on the scope of its discovery responses to policies and
8  procedures in effect in 2005 constitutes a waiver of its objections to these discovery responses.
9         Nomura argues in its reply (#103) that the documents are directly responsive to its discovery
10 requests; that Nomura had no reason to object to nBank's temporal limitation because Nomura did not
11 receive the disputed documents until discovery closed; and that the documents belie nBank's claims
12 and legal theories in this case.
13        During oral argument at the hearing on September 28, 2007, counsel for Nomura argued that
14 even if the disputed documents were created in 2006, they should have been produced because they
15 pertain to policies and procedures in effect in 2005.  Counsel for Nomura stressed that he had no way of
16 knowing that nBank limited its production to documents created in 2005 based on nBank's written
17 responses to Request for Production ## 3, 6, and 42. Counsel for Nomura also asserted that had the
18 documents been produced Nomura would have conducted discovery differently, and, at a minimum,
19 taken additional depositions suggested by the content of the documents.  Counsel for nBank responded
20 to this argument by asserting that Nomura's interpretation of its discovery requests would have required
21 nBank to go through every document in the history of the Broker Participation Division to determine if
22 it related to policies and procedures in effect in 2005.  Since this would be too burdensome, nBank
23 reasonably  limited its responses to documents created in 2005, and if Nomura wanted documents
24 relating to policies and procedures that existed in 2005 it should have objected to nBank's responses
25 and raised the issue more timely after reviewing the documents produced .
26 / / /
27 / / /
28 / / /

**DISCUSSION**

**A.   APPLICABLE LAW**

Courts have the inherent power to impose sanctions for a party's failure to engage in discovery. "Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992), citing, Chambers v. NASCO, Inc., 501 U.S. 32 (1991), quoting, Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962). The Ninth Circuit has recognized that a court's inherent powers include the "'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" Id., quoting, Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir.1980) (citations omitted).

A court has the inherent authority to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 916 (9th Cir. 1987) (citations omitted). Dismissal is proper where the party's conduct is due to willfulness, bad faith, or fault, and there is a nexus between the misconduct and the matters in controversy such that the rightful decision of the case is threatened. Anheuser-Busch v. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995). Dismissal ensures the integrity of the court's orders and the orderly administration of justice. Halaco Engineering Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988).

Rule 37(b) of the Federal Rules of Civil Procedure also authorizes litigation-ending sanctions for a party's failure to engage in discovery. See Shepherd v. American Broadcasting Co., Inc., 62 F.3d 1469 (D.C. Cir. 1995) (holding court may impose litigation-ending sanctions where it finds by clear and convincing evidence that abusive litigation behavior occurred and lesser sanction would not sufficiently punish and deter the misconduct). In Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521 (9th Cir. 1997), the Ninth Circuit upheld the district judge's entry of default judgment in this district against a defendant for violating the court's order to appear for his deposition after he repeatedly

/ / /

/ / /

1  failed to submit to a deposition.  When dismissal or default is the sanction, however, "the range of
2  discretion is narrowed and the losing party's noncompliance must be due to willfulness, fault, or bad
3  faith."  Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir. 1997), quoting, Henry v. Gill Indust., 983
4  F.2d 943, 946 (9th Cir. 1993).  Default is "so harsh a penalty, it should be imposed as a sanction only in
5  extreme circumstances."  Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir. 1996), quoting,
6  Thompson v. Housing Auth. of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986).]
7       Under both the court's inherent powers and Rule 37, the court must weigh the following factors
8  before imposing case-dispositive sanctions: 1) the public's interest in expeditious resolution of
9  litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the party seeking
10 sanctions; 4) the public policy favoring disposition of cases on their merits; and 5) the availability of
11 less drastic measures.  Anheuser-Busch, 69 F.3d at 348; Hwang, 105 F.3d at 524.

12 **B.**    **ANALYSIS**
13     **1.**    **Responsiveness of documents**
14      Having reviewed the moving and responsive papers, and the withheld documents, the court
15 finds the withheld documents were responsive to Nomura's discovery request and should have been
16 produced.  The court also rejects nBank's arguments that the limitation of its responses to requests for
17 production ## 3, 6 and 42 was reasonable and placed Nomura on notice that it had only produced 2005
18 material such that Nomura's prior failure to object to the limitations waived its objections.  Nomura's
19 responses to Request for Production ## 3, 6 and 42 indicated nBank would produce responsive non-
20 privileged documents "**relating** to policies and procedures in effect in 2005 at a mutually agreeable
21 time and place." (Emphasis added)  The responses did not suggest, as counsel for nBank argued at the
22 hearing, that nBank only searched for and agreed to produce documents relating to policies and
23 procedures **created** in 2005.
24      The documents at issue are clearly related to nBank's policies and procedures described in
25 Request for Production ## 3, 6, and 42.  For example, the document entitled "Warehouse Lines Possible
26 Risks and Recommendations" contains a section entitled "Bailee Letter" which is at the heart of this
27 / / /
28 / / /

1  discovery dispute.  In it, the author identifies a risk that an investor may not honor nBank's bailee letter
2  and may not send funds to nBank and could deliver nBank's note either to a broker or lender or another
3  investor without nBank's permission resulting in nBank having no recourse against the investor.  The
4  author then recommends that nBank's bailee letter be strengthened with language that more clearly
5  identifies that acceptance of the Note(s) binds the investor to the terms of the bailee letter.  The author
6  also recommended that the bailee letter be approved by legal counsel to ensure it allowed nBank to
7  enforce a demand for funds if the investor violated the terms of the bailee agreement.  The author
8  attached samples of bailee letters used by other warehouse lenders for "review and implementation".
9  The email chain which discusses the Risk Memo was also not produced and  consists of
10 communications between nBank employees in which Mistie  Roberson identified potential risks with
11 the form of bailee letter at issue here and made recommendations for improvement.  At a minimum the
12 withheld documents establish nBank was on notice through Ms. Roberson, it's Vice President and
13 Quality Control Manager, of her opinion that there were legal and financial risks associated with the
14 form of bailee letter nBank relies upon to pursue its claims against Nomura in this case.  In short, the
15 court finds the documents were responsive to Nomura's Request for Production and should have been
16 produced.

17      Nomura seeks an order striking nBank's third party complaint and entry of default judgment in
18 favor of Nomura for its failure to produce the withheld documents.  Default judgment is such a harsh
19 sanction that it should be imposed only in extreme circumstances and when a party's non-compliance
20 with its discovery obligations is due to willfulness, fault, or bad faith.  Payne v. Exxon Corp., 121 F 3d
21 503, 507, (9th Cir. 1997).  The Ninth Circuit requires the court to weigh: 1) the public's interest in
22 expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to
23 the party seeking sanctions; 4) the public policy favoring disposition of cases on their merit; and 5) the
24 availability of less drastic measures.  Anheuser-Busch 69 F 3d at 348, Hwang, 105 F 3d at 524.

25      Here, nBank's failure to produce clearly responsive documents before the expiration of the
26 discovery cutoff has delayed the expeditious resolution of this litigation and interfered with the court's
27 / / /
28 / / /

1  management of its docket to the extent the court has had to address this and other discovery disputes
2  after the close of discovery necessitating an adjustment of the court's discovery plan and scheduling
3  order deadlines.  Nomura has established that, had it timely received the withheld documents, it would
4  have conducted discovery somewhat differently, and would have relied on the withheld documents to
5  support its motion for summary judgment.  However, although the court has found that the withheld
6  documents were responsive and should have been produced, the court is not persuaded Nomura has
7  been prejudiced as severely as it claims.  The Risk Memo authored by Ms. Roberson is the document
8  Nomura asserts establishes nBank knew that its bailee letter was unenforceable upon mortgage
9  investors.  Withholding this document, it is argued, has tainted the entire litigation and severely
10 prejudiced Nomura such that entry of default judgment in favor of Nomura is the only appropriate
11 remedy.  The court's own review of the document suggests otherwise.  The memo is a multi-paged
12 document, only a paragraph of which is addressed to the form of bailee letter at issue in this case.  Ms.
13 Roberson, a non-lawyer, expresses her concerns that an investor may not honor nBank's bailee letter,
14 that the letter should be strengthened with additional language, and reviewed by legal counsel.  It is not,
15 as Nomura suggests, an admission by nBank that its bailee letter is unenforceable.  The fourth factor,
16 the public policy favoring disposition of cases on their merits weighs in favor of Nomura.  Finally, less
17 drastic measures are available to address nBank's failure to produce the responsive documents.

18         In determining whether a district court has properly considered the adequacy of less drastic
19 sanctions before imposing case-dispositive sanctions the Ninth Circuit considers: 1) whether the district
20 court explicitly discussed the feasability of less drastic sanctions and explained why such alternative
21 sanctions would be inappropriate; 2) whether the district court implemented alternative sanctions before
22 ordering case-dispositive sanctions; and 3) whether the district court warned the party of case-
23 dispositive sanctions before ordering them.  <u>Anheuser-Busch</u> 69F 3d at 352.  Although the court has
24 adjudicated multiple discovery disputes among the parties, the disputes the court has decided have not
25 resulted in a warning to either nBank or Nomura that case-dispositive sanctions for discovery violations
26 would be considered.  In summary, weighing the factors the Ninth Circuit requires the court to consider,
27 / / /
28 / / /

the court finds dispositive sanctions for nBank's failure to produce the withheld documents was not due to willfulness, fault or bad faith and that less drastic sanctions are available. Dispositive sanctions are therefore not warranted.

The court reaches this conclusion for several reasons. First, although nBank did not produce the documents in this litigation, it does not appear it did anything to "hide" the documents or make them unavailable. The documents were produced in the South Carolina litigation in response to a request for documents created as part of nBank's internal audit of its Broker Participation Division, and were not designated "confidential" to inhibit or preclude their disclosure elsewhere. Second, the court accepts counsel for nBank's representations during oral argument that the documents were not produced because literal compliance with the request would have required nBank to sift through a large number of documents in the Broker Participation Division to determine whether responsive documents related to a policy or procedure in effect in 2005 could be located.

Third, as indicated, the court is not persuaded that the withheld documents are the "smoking guns" that Nomura claims they are. While the documents may be helpful to Nomura's defense against nBank, they do not, as Nomura claims, "express nBank's knowledge that *the "Bailee Letter" imposes no enforceable contractual obligations upon mortgage investors*." (Mot. at 3) (emphasis in original) The documents are not so damaging to nBank's case that it is likely nBank would risk litigation-ending sanctions to avoid producing them in this case, especially since nBank did produce them in the South Carolina case without taking any steps to ensure they would not be disclosed to other litigants.

Finally, the court finds that there is an insufficient nexus between the failure to produce the withheld documents and matters in controversy in this case such that the rightful decision of this case is threatened by the failure to produce these responsive documents. However, because the documents were clearly responsive to Nomura's discovery requests, and because nBank has not satisfied the court that its failure to produce the documents was the result of undue burden, the court finds nBank should suffer some sanction. nBank's response to Request for Production ## 3, 6 and 42 indicated it would produce non-privileged documents relating to the subject matter of each request in effect in 2005.

/ / /

/ / /

1 Nomura had no way of knowing nBank interpreted this response to refer to documents created in 2005 whether or not they related to policies and procedures in effect in 2005. The court will therefore allow Nomura to take the deposition of Mistie Roberson and Michelle Harold in her personal capacity and assess the reasonable costs and attorney's fees incurred in taking these depositions against nBank.

## **CONCLUSION**

The court finds that the four documents withheld from production which Nomura obtained from counsel in the South Carolina litigation were responsive to Nomura's requests for production and should have been produced. Weighing the factors the Ninth Circuit dictates, case-dispositive sanctions are not warranted. However, the court will impose sanctions in the form of reasonable costs and attorney's fees incurred in filing the emergency motion for sanctions, grant Nomura leave to take the depositions of Mistie Roberson and Michelle Harold, and assess nBank the reasonable costs and attorney's fees associated with taking these depositions.

For all of the foregoing reasons, and good cause appearing,

**IT IS ORDERED** that third-party defendant Nomura's Emergency Supplemental Motion for Discovery Sanctions (#90) is GRANTED in part and DENIED in part. The Motion is granted to the extent that:

1. The court will sanction nBank in the form of reasonable costs and attorney's fees incurred in bringing the emergency motion for sanctions;
2. Nomura is granted leave to conduct the depositions of Mistie Roberson and Michelle Harold;
3. nBank shall pay Nomura's reasonable costs and attorney's fees incurred in taking the Roberson and Harold depositions.
4. The motion is DENIED in all other respects.

**IT IS FURTHER ORDERED**, counsel for the parties shall forthwith meet and confer to arrange the depositions of Ms. Roberson and Ms. Harold at a mutually agreeable date and time within 30-days of entry of this order.

/ / /

/ / /

**IT IS FURTHER ORDERED**, within 15-days of the completion of the depositions of Ms. Roberson and Ms. Harold counsel for Nomura shall submit a memorandum of costs and attorney's fees for the costs and fees the court has indicated it will access. The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the attorney(s) or staff member(s) customary fee for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

**IT IS FURTHER ORDERED** that nBank shall have 15 days from service of the memorandum of costs and attorneys' fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

Dated this 7th day of January, 2008.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE